# CASES

DECIDED IN THE

# SUPREME COURT OF GEORGIA

AT THE

# MARCH TERM, 1924

---

## IVESTER et al. v. McNICHOLAS, trustee.

1. Where a debtor files his voluntary petition in bankruptcy, in which he lists only one creditor (he being listed as a judgment creditor) and schedules no assets, and subsequently procures a discharge from all provable debts without any trustee in bankruptcy ever having been selected, the judge of the court of bankruptcy has jurisdiction, on petition of the judgment creditor and notice to the bankrupt after such discharge, to reopen the bankruptcy case for the purpose of recovering and administering assets that have been concealed, and, as a means of accomplishing such purpose, to appoint a trustee in bankruptcy and authorize him to sue for the property.

(a) Where the judge of the court of bankruptcy in the exercise of his jurisdiction appoints a trustee and clothes him with power as indicated above, the judgment of appointment cannot be collaterally attacked by the bankrupt, or one claiming under him, when the trustee applies to a State court to be made a party plaintiff in an equitable suit instituted by the judgment creditor against the bankrupt and his alleged fraudulent grantee to recover land as the property of the bankrupt.

(b) It was not erroneous to allow the trustee in bankruptcy to become party plaintiff in the equity suit pending in the State court and to prosecute that case to final judgment.

2. The plaintiff was permitted to testify, over objection: "That the Atlanta Trust Company holds a deed to secure debt for the sum of $6000.00, and that he, J. N. Brown, was unable to pay off the loan, for the reason that he did not have the money." *Held*, that the court did not err in admitting the testimony in evidence over the objection, "that it is irrelevant and immaterial and no pleadings to authorize the evidence."

3. A judgment denying a motion for a new trial will never be reversed on the ground that the judge refused to direct a verdict. *Central of Geor-*

*gia Railway Co.* v. *Mole,* 131 *Ga.* 166 (62 S. E. 164) ; *Ford* v. *Blackshear Manufacturing Co.,* 140 *Ga.* 670 (79 S. E. 576).

4. It is no ground for nonsuit, that certain documents that were introduced in evidence were not properly certified. Objections of that character should be addressed to admissibility of the evidence, not to its weight.

5. A motion for a new trial is not the remedy for reviewing an exception to a judgment allowing an amendment to the original petition in a case, or an exception to the final decree.

6. The grounds of the motion for a new trial, assigning error on portions of the charge as set out in the sixth division of the opinion, are without merit.

7. The evidence was sufficient to support the verdict, and the judge did not err in refusing a new trial.

No. 3918. March 11, 1924.

Equitable petition. Before Judge Eve. Tift superior court. July 3, 1923.

*R. A. Hendricks,* for plaintiffs in error.

*R. D. Smith,* contra.

Atkinson, J. On July 28, 1921, J. N. Brown instituted an equitable action against T. A. Ivester and his son, Eugene L. Ivester. The object of the suit was to subject certain property standing in the name of Eugene L. Ivester to payment of a common-law judgment obtained by the plaintiff against T. A. Ivester, dated July 5, 1921, based on a debt due July 15, 1919, for services as a real-estate broker. The petition alleged: that the common-law suit was instituted on June 15, 1920, and at the December term the parties signed a stipulation, duly approved by the court, which provided that upon the passing of the case for the term, "unless the amount sued for has been paid by the July term, 1921," the plaintiff should have judgment for the full amount sued for, without appeal; that subsequently to the agreement T. A. Ivester commenced planning to place all of his property beyond the reach of any execution that might be issued in favor of petitioner; that in pursuance of such plan Ivester, on April 23, 1921, executed a deed to his son, Eugene L., dated back to April 1, 1920, purporting to convey 39-71/100 acres being a described portion of lot number 445; that prior to December 9, 1920, having purchased and partially paid for another described tract of 316-10/100 acres, comprising portions of lots numbers 430 and 431, T. A. Ivester completed payment of the purchase-price and caused the conveyance from the vendor to be taken in the name of his son, Eugene L.; that the latter

was insolvent and the conveyances above mentioned, if effective, would render T. A. Ivester insolvent; that both of the conveyances to Eugene L. were without consideration and intended by T. A. Ivester to hinder and delay his creditors in the collection of their debts, and especially the plaintiff, and such intention was known to Eugene L. at the time he received the conveyances, and consequently they were fraudulent and void as against plaintiff; that on November 1, 1920, Eugene L. executed a security deed to the larger tract above mentioned to the Atlanta Trust Company for a debt of $6000, which deed is outstanding and will prevent a levy of plaintiff's fi. fa.; that T. A. Ivester is in possession of both tracts of land, notwithstanding such conveyances; and that the larger tract has a rental value of $500 per annum. There were prayers, that the deed by T. A. Ivester to Eugene L., for the smaller tract, be set aside and the land decreed to be the property of T. A. Ivester; that the title to the larger tract be decreed to be in T. A. Ivester subject to the prior incumbrance of the Atlanta Trust Company; and that a receiver be appointed to take charge of the lands and collect the rents. The defendants filed separate answers, admitting that they bore the relation of father and son, that they resided in the county, that Eugene L. Ivester held the alleged conveyances and had executed the security deed to the Atlanta Trust Company, which is outstanding; but they denied all other material allegations, and pleaded specially that the conveyances were made bona fide and for a valuable consideration and without intention to hinder or delay creditors.

On July 3, 1922, T. A. Ivester filed his application to stay all further proceedings in the equity suit until he could obtain a discharge upon his voluntary petition in bankruptcy filed October 11, 1922. This was subsequently amended by alleging that the debt was duly scheduled in the petition for bankruptcy, and was a dischargeable debt. On July 5, 1922, the plaintiff filed an amendment to the prayers of the petition, in which he prayed for the right to redeem the property embraced in the security deed to the Atlanta Trust Company. On December 4, 1922, the court permitted Thomas A. McNicholas, as trustee in bankruptcy for T. A. Ivester, to become a party plaintiff for prosecuting the equity suit. The order was granted upon the petition of McNicholas, to which was attached a copy of an order from the court of bankruptcy appoint-

ing him trustee in bankruptcy and directing him to apply to be made a party in the suit. The defendants objected to this application, on the ground that the order of the judge appointing the trustee was void for the reason that the judge was without jurisdiction to appoint such trustee. The objection was overruled, and the defendants excepted pendente lite. A general verdict for the plaintiff was returned on December 5, 1922. After the verdict and after defendants had filed a motion for a new trial, that is to say on December 11, 1922, an amendment to the petition was allowed which set out an exemplification of the record in the bankruptcy court, and at the same time a decree was entered. The defendants' motion for a new trial was amended, and after a hearing was overruled. The defendants excepted, and assigned error also on the exceptions pendente lite. Other facts will sufficiently appear in this opinion.

1. It is insisted that the judgment rendered by the United States district judge in the court of bankruptcy, appointing McNicholas trustee of the bankrupt, T. A. Ivester, was void because the judge did not have authority to open the case and to make such appointment, and therefore McNicholas, trustee, could not become a party plaintiff in the suit of Brown against Ivester, nor as such prosecute the case or recover a judgment against the defendants. The point was raised by objections to the making of McNicholas, trustee, a party plaintiff, as referred to in the exceptions pendente lite; and by objections to the admissibility of evidence, motion to exclude evidence after it was admitted, motion for a nonsuit, and motion to direct a verdict for the defendants, to which grounds one, two, and four of the motion for a new trial relate; and by exception to the sufficiency of the evidence to support the verdict, as complained of in the general grounds of the motion for a new trial. The assignments of error in the exceptions pendente lite and those contained in the specified grounds of the motion for a new trial all relate to voidness of the judgment of the court of bankruptcy appointing the trustee, based on alleged absence of authority in the judge to open the case and make the appointment. In these circumstances it will be sufficient to deal with the question as to authority of the judge, without entering into a discussion of the assignments of error separately. It was shown that upon his voluntary petition in bankruptcy, filed on October 11, 1921, T. A. Ivester was adjudicated

a bankrupt, and on August 5, 1922, he was discharged; that the plaintiff, J. N. Brown, whose judgment was obtained on July 5, 1921, was listed as a creditor holding the common-law judgment now involved in the equity suit, and that he proved his claim in bankruptcy; that plaintiff's claim was the only listed debt in the bankrupt's schedule of debts, and that "no assets" were listed as belonging to his estate; that no trustee was ever selected by creditors, for the reason that a trustee seemed unnecessary; that on August 15, 1922 (ten days after the discharge in bankruptcy), the plaintiff petitioned the court of bankruptcy to reopen the case and appoint a trustee for the estate of the bankrupt, who should be directed to become a plaintiff in the equity suit in the State court for the purpose of recovering property of the estate of the bankrupt, alleged to have been fraudulently omitted from the schedule of assets required to be put in the petition for bankruptcy; that upon such petition, after due notice to the bankrupt and a hearing, the judge of the court of bankruptcy, on October 4, 1922, granted an order, reopening the bankruptcy case, appointing the trustee, and directing him to apply to the State court to be made party plaintiff in the equity suit; that the trustee gave bond as required by the order of his appointment, and was made party plaintiff in the equity suit by order of the State court.

Section 2, paragraph 8, of the bankruptcy act (1 Fed. Stat. Ann. (2d ed.) 516, 531) invests the district courts of the United States in the several States, within their respective territorial limits, with jurisdiction, to "close estates, whenever it appears that they have been fully administered, by approving the final accounts and discharging the trustees, and reopen them whenever it appears they were closed before being fully administered." Section 44 of that act (1 Fed. Stat. Ann. (2d ed.) 516, 926) provides: "The creditors of a bankrupt estate shall, at their first meeting after the adjudication or after a vacancy has occurred in the office of trustee, or after an estate has been reopened, or after a composition has been set aside or a discharge revoked, or if there is a vacancy in the office of trustee, appoint one trustee or three trustees of such estate. If the creditors do not appoint a trustee or trustees as herein provided, the court shall do so." It is clear from these provisions of the act that the judge of the court of bankruptcy had jurisdiction to reopen the case for the purpose of completely administering the estate of

the bankrupt. It is equally clear that the court had jurisdiction to appoint the trustee. Section 44 of the bankruptcy act is but a part of an act providing for adjudication, administration, and discharge in bankruptcy, and as to all such matters investing jurisdiction in the United States district courts of the several States as courts of bankruptcy. As a consequence the judge of the district court, in virtue of the authority to administer estates in bankruptcy, has jurisdiction to appoint trustees for such estates. The section regulates the exercise of this jurisdiction, and confers the right or privilege upon creditors to select trustees in the first instance, but does not take away the jurisdiction of the court as to such selection. On the contrary such jurisdiction of the court is recognized, and it is expressly made the duty of the judge to exercise that jurisdiction when the creditors fail to select a trustee or trustees where such trustees are necessary for administration of an estate in bankruptcy. In this case the judge of the bankruptcy court probably considered the petition of the sole creditor of the bankrupt for the appointment of a trustee the equivalent of a selection by creditors, or he might have taken into consideration the fact that after more than a reasonable time had intervened creditors had not selected a trustee, and upon one or both of such grounds made the appointment.· But the reason which may have influenced the judge to exercise his jurisdiction need not be here considered. It is sufficient for the purposes of this case that he had jurisdiction and exercised it. The judgment appointing a trustee under the exercise of jurisdiction, unexcepted to in that court, was conclusive as to the bankrupt, and was certainly not subject to collateral attack by him or his alleged fraudulent grantee, in the equity suit in the State court, on account of any supposed error or irregularity in the order of appointment. In the recent case of *Fite* v. *Henson,* 157 *Ga.* 679 (122 S. E.) a judgment of a State court appointing a receiver of a State bank was held to be void, and for that reason subject to a collateral attack in a suit instituted by the receiver against stockholders of the bank; but in that case the principle was recognized, and authority cited supporting the principle, that a· valid judgment of a court of competent jurisdiction appointing a receiver was not subject to collateral attack on account of error or irregularity in its rendition. The principle would apply equally to the case of a judgment appointing a trustee in bankruptcy. In this case the

judge of the court of bankruptcy had jurisdiction to reopen the case and appoint the trustee, and the appointment was not subject to collateral attack in the equity suit in the State court. It follows that there was no merit in any of the assignments of error referred to in the beginning of this division of the opinion.

2-4, 5, 7. The rulings announced in the second, third, fourth, fifth, and seventh headnotes do not require elaboration.

6. The grounds eight to eleven, inclusive, of the motion for a new trial assign error on portions of the charge as follows: (a) "Now the court cautions you that it is not necessary for you in any manner to inquire into the validity of the execution. The judgment is a valid one and the execution has legally issued, and it constitutes a lien upon any property of the defendant, T. A. Ivester. It will not be necessary for you to inquire into that." This charge was alleged to be erroneous: "For the reason that the court instructed the jury that the judgment, without qualification, constituted a lien upon any property of the defendant, T. A. Ivester. This was misleading, for the reason that the jury might have understood, and probably did so understand, that if the evidence showed that T. A. Ivester had ever owned any of the property described in the plaintiff's petition and about which testimony had been introduced, that the jury should find in favor of the plaintiff. For the reason that the judgment does not constitute a lien against any of the property of T. A. Ivester, acquired after the judgment was rendered and before execution issued and was recorded, that was or may have been acquired by any bona fide innocent purchaser. The instructions of the court were not applicable to the pleadings and the facts in the case, were misleading and confusing to the jury, and harmful to the rights of the defendants." (b) "If it was a bona fide transaction based on a valid consideration and free from fraud, as to Eugene L. Ivester, then, of course, you could not find against the validity of the conveyance. Of course, I am not speaking of a voluntary conveyance. If you find that no such aim, purpose, or design to hinder, defraud, or delay creditors existed, and that the transactions were bona fide and in good faith, then of course you would find in favor of the defendants." The exception to this part of the charge was: "To use the sentence, 'of course, I am not speaking of a voluntary conveyance,' for the reason that the court nowhere in connection with this portion of the charge, or elsewhere in

his instructions to the jury, defined to them what he meant by the expression 'voluntary conveyance.' It was the duty of the court, having made reference to a voluntary conveyance, to give the law on this subject, without request, to the jury; and this is especially true, for the reason that it was not necessary for the court to make reference to a voluntary conveyance, and, having done so, it was the duty of the court to charge the law fully of voluntary conveyances; and having failed in this, the error is so prejudicial until it requires the grant of a new trial." (*c*) "I charge you that it is not the province of the jury to consider the amount or question of the amount that this property would bring if sold under an order of this court. You are not concerned with that question. I will say further in connection with that matter that that is not a matter to be inquired into, investigated, or looked into by this jury as to what the land would or would not bring. Of course, it is for the jury to decide whether the fraud set up and charged in the petition was committed, and whether as a result of such fraud, if you find that any fraud did exist, the transfer or conveyance on the part of T. A. Ivester to Eugene L. Ivester was invalid, and whether or not it should be set aside, if you find from the evidence that there was fraud as charged in the petition." This was alleged to be erroneous: "For the reason that the undisputed evidence in the record proved on the date of the trial that even if the property was owned by T. A. Ivester, as contended by the plaintiff, that there was no equity in the property over and above the liens upon it. This being true, it was an idle . . thing to submit to the jury and to give to them the right to set aside the equitable title when no equitable title existed and no equity existed, for the reason that the defendants had expressly made the issue that there was no equity of redemption in either of the tracts of land, and for this reason the jury should find in favor of the defendants. The defendants having supported this theory of the case by evidence uncontested upon the part of the plaintiff, it was the duty of the court to submit this question to the jury, and if the jury should have found there was no equity, then their verdict should have been for the defendants, for the reason that the equitable title could not be set aside if there was no equity, neither could the equitable title be set aside if there was equity until the legal title was first set aside." (*d*) "I charge you that a transaction between father and son you will scan with care."

This part of the charge was alleged to be erroneous: "For the reason that the court used the word 'will' when it was proper that he should use the word 'should' and in the use of the word 'will' instead of 'should' stated the rule of law stronger than authorized, amounted to an expression of an opinion by the court, and was tantamount to direction of the jury to find that the transaction between the father and the son in this case was fraudulent. It withdrew from the jury their right to consider whether the transaction between the father and the son was fraudulent or not."

There is no merit in the above-quoted grounds of the motion for new trial.  *Judgment affirmed. All the Justices concur.*